UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JANET GARCIA and CHRISTOPHER HERB ,
individually and on behalf of all others similarly situated          Index No. 10-CV-1618
                                                                                  (Gleeson, J.)
                               Plaintiffs,

           - against-

SUK CHAN LEE a/k/a BRUCE LEE and KWANGOK SUNG
a/k/a KAY LEE, d/b/a ONE GREENE JAPANESE
RESTAURANT & LOUNGE, 17 GREEN FARM a/k/a 17
GREENE FARM, FRESH GARDEN, SILVER SPOON and
MIRAI WELLNESS &SPA


                              Defendants.
----------------------------------------------------------------x


# PLAINTIFFS" MEMORANDUM OF LAW IN SUPPORT OF THEIR ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

       Plaintiffs respectfully submit this memorandum of law in support of their application by order to show cause for a temporary restraining order and a preliminary injunction. Without the relief Plaintiffs request, retaliation and intimidation by Defendants will cause Plaintiffs and their co-workers irreparable harm.

## PRELIMINARY STATEMENT

    Defendants have responded aggressively to complaints about labor law violations by punishing workers who complain. Prior to the commencement of this action, they fired plaintiff Herb in retaliation for filing a complaint with the New York State Department of Labor. See Herb Declaration submitted herewith. They reduced the hours of plaintiff Garcia in retaliation

1

for filing the complaint in this action. See Garcia Declaration submitted herewith.

These tactics serve a single aim: dissuade workers from asserting their rights.

Without prompt Court intervention, this policy of retaliation will continue to interfere with and prevent plaintiffs' rights to compensated in a lawful manner.

This Court has the authority to grant a temporary restraining order and a preliminary injunction in the circumstances of this case. The language of the proposed order is taken verbatim from <u>Barturen v. Wild Edibles, Inc.</u>, 2007 U.S. Dist. LEXIS 93025 (S.D.N.Y. Dec. 18, 2007), a similar wage and hour action collective and class action. A copy of the decision, containing the language of the restraining order, is annexed to this memorandum of law.

## PLAINTIFFS WILL SUFFER IRREPARABLE HARM
## ABSENT IMMEDIATE INJUNCTIVE RELIEF

Plaintiffs will suffer irreparable harm unless this Court grants immediate injunctive relief. Unless Defendants are enjoined from continuing to retaliate against Plaintiffs, they will have created the type of atmosphere that dissuades anyone else from coming forward.  In this situation, Plaintiffs will not be able to find witnesses to testify in their favor, and they may decide to give up prosecuting their claims.  This is irreparable harm, and it warrants immediate injunctive relief.

Section 15(a)(3) of the Fair Labor Standards Act ("FLSA") makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C §215(a)(3).   Indeed, the protections afforded by the FLSA can only be effective if the

anti-retaliation provision is strongly enforced. As the Supreme Court has explained, "effective enforcement [of the FLSA]… could only be expected if employees felt free to approach officials with their grievances…[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." Mitchell v. Robert DeMario Jewelry, Ing., 361 U.S. 288, 335 (1960); see also Centeno-Bernuy v. Perry, 302 F.Supp. 2d 128, 135(W.D.N.Y.2003)("Unchecked retaliation, no matter its form, subverts the purpose of the FLSA…and other federal employment laws."). New York labor law includes similar provisions. See N.Y.Lab.Law § 215(1)("No employer or his agent, or the officer or agent of any corporation, shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer, or . . . has caused to be instituted a proceeding under or related to this chapter….").

It is well established that an employer's retaliatory acts can irreparably harm employees, particularly where these acts deter potential plaintiffs or potential witnesses from coming forward to challenge the employer's illegal conduct. See, Holt v. The Cont'l Group, Inc., 708 F.2d 87, 91 (2d Cir. 1983)("A retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights …or from providing testimony for the plaintiff in her effort to protect her own rights. These risks may be found to constitute irreparable injury."); see also, Garcia v. Lawn, 805 F.2d 1400, 1405 (9th Cir. 1986)("The claimed violation of the law in this case is retaliatory action for the exercise of Title VII rights, action which, if plaintiff is correct, will have a deleterious effect on the exercise of these rights by others."); Bonds v. Heyman, 950 F.Supp. 1202, 1214-15 (D.D.C. 1997), abrogated on other grounds by Nat'l R.R. Passenger Corp. V. Morgan, 536 U.S. 101, 105 (2002)("[A] plaintiff who

3

demonstrates that an adverse personnel action is likely to have a chilling effect on other employees who, after witnessing their fellow co-worker's discharge or dismissal, would now refuse to file claims in fear of reprisal, would also meet [the preliminary injunction standard].").

Courts have been particularly willing to find irreparable harm where victims of retaliation are highly visible, such that other plaintiffs or potential witnesses are presumptively aware of the alleged retaliatory acts.  See, e.g., Segar v. Civiletti, 516 F.Supp. 314, 320 (D.D.C. 1981)(holding that retaliatory demotion and transfer of "highly visible" plaintiff sends message to others to "know your place, don't challenge management, don't assert your right[s]").  Defendants have a number of closely connected locations, and the fact that plaintiff Garcia's hours have been reduced will be known to other employees, and will make clear the consequences to other employees when they seek to be paid fairly, according to the law.

In sum, Plaintiffs will be irreparably harmed in their ability to vindicate their rights absent preliminary injunctive relief.  For this reason, the Court should require the Defendants to maintain the status quo until this litigation is completed.

### PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR RETALIATION CLAIMS

Claims under FLSA anti-retaliation provision are analyzed under the familiar McDonnell Douglas framework.  See, Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 876 (2d Cir. 1988).  A plaintiff must first establish a prima facie indication of retaliation, by showing "(1) participation in protected activity know to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Lai v. Eastpoint Int'l, Inc., No. 99 Civ.2095, 2000 WL 1234595, at

*3 (S.D.N.Y. Aug. 31, 2000).  "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Id. (quoting Cruz v. Coach, 202 F.3d 560, 566 (2d Cir.2000)).  A plaintiff may establish a causal connection "either indirectly by showing that the protected activity was closely followed in time by the adverse action, Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988), or through other evidence such as diparate treatment of fellow employees who engaged in similar conduct, or directly though evidence of retaliatory animus directed against a plaintiff by the defendant." Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991) (internal quotations omitted)(emphasis removed).

As set forth in the declarations of Janet Garcia and Christopher Herb, after they complained about wage and hour law violations, Kwangok Sung retaliated shortly thereafter. In the case of Christopher Herb, he was fired on the spot, after he exhibited a copy of the complaint that he had filed with the New York State Department of Labor, and Kwangok Sung criticized him for filing the complaint. In the case of Janet Garcia, her hours were cut in half shortly after this complaint was filed, and Kwangok Sung said she was reducing the hours because of the complaint.

Once a plaintiff satisfies his or her prima facie obligation, the defendant must articulate legitimate, non-discriminatory reason for the adverse employment actions.  Lai, 2000 WL 1234595, at *4.  If the defendant does so, the plaintiff must produce evidence that the defendant's explanation is false, and that retaliation was more likely than not the real reason for the employment action. See id.

Plaintiffs easily satisfy their prima facie burden of showing retaliation. First there can be

no serious dispute that by demanding legal wages Plaintiffs engaged in "protected activities" under the meaning of FLSA and New York State Labor Law. Defendants obviously cannot dispute they were aware of these activities and of the identity of the individual Plaintiffs taking part in them.

Second, it is equally clear the Plaintiffs alleging retaliation have suffered adverse employment actions. "Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002)(internal quotation marks and citation omitted.)

In sum, Plaintiffs have offered sufficient evidence both that there is a causal connection between their participation in protected activities and Defendants' actions against them.

## THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFFS' FAVOR

Even if Plaintiffs could not show a likelihood of success on the merits (which here they have), Plaintiffs can at the very least show "sufficiently serious questions going to the merits to make them a fair ground for litigation," plus "a balance of the hardships tipping decidedly toward the party requesting preliminary relief." Fed. Express Corp. v. Fed. Expresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000). As explained above, Plaintiffs have offered strong indications that, and thus "substantial questions" about whether, Defendants are engaged in an ongoing campaign of retaliation.

It is also clear the balance of hardships tips decidedly toward Plaintiffs in this lawsuit: Plaintiffs who remain employed with defendants are desperately in need of injunctive relief. They work with constant harassment and the threat of termination - and thus, of losing their livelihoods and means of support. On the other side of the equation, Defendants will suffer only

minimal hardship in being forced to comply with the law.  Should a situation arise where Defendants feel they must take action against a Plaintiff, they can easily seek Court approval.  Defendants should not be engaging in retaliatory conduct at all, and they should certainly not be firing their workers for requesting to be paid according to the law.  In this situation, Defendants cannot complain that an injunction would impose a substantial hardship; Defendants are simply being asked to comply with the law.

     Plaintiffs in this lawsuit are in a vulnerable position.  Many do not speak English, and all depend on their jobs to support themselves and their families.  In <u>Aguilar v. Baine Service Systems, Inc.</u>, 538 F.Supp.581, 585 (S.D.N.Y. 1982), for example, the court ordered an employer to reinstate Hispanic employees claiming discharge in retaliation for complaints of discriminatory treatment, and noted that "[o]n the one hand, if an injunction is not forthcoming, plaintiffs lose their livelihood and sole financial means.  On the other hand, if an injunction does issue, defendants will merely be required to retain the plaintiffs in their current employ."  Similarly, in <u>Callicotte v. Carlucci</u>, 698 F.Supp. 944, 951 (D.D.C.1988), the court held that a worker alleging wrongful termination had demonstrated that she would face irreparable injury if her termination was upheld, while the employer had only demonstrated a "short-term" burden in keeping her on the payroll.  So too here.  The facts of this case warrant injunctive relief.

## CONCLUSION

For all of the above reasons, Plaintiffs respectfully submit they are entitled to emergency relief. Plaintiffs request that this Court issue a temporary restraining order and preliminary injunction prohibiting Defendants from taking any further adverse employment actions against Plaintiffs and other employees containing the same terms of the court order in <u>Barturen v. Wild Edibles, Inc.</u>, 2007 U.S. Dist. LEXIS 93025 (S.D.N.Y. Dec. 18, 2007) annexed hereto.

Dated: New York, New York
       May 17, 2010

                              Respectfully Submitted

                              Law Offices of Jonathan Weinberger
                              Attorneys for Plaintiffs

BY: _/s/ Jonathan Weinberger_

Jonathan Weinberger (JW-2425)
880 Third Avenue, 13th Fl.
New York, New York 10022
(212) 752-3380



LEXSEE 2007 U.S. DIST. LEXIS 93025

**CESAR A. BARTUREN, JASON BORGES, RAUL LARA MOLINA, RAYMUNDO LARA MOLINA, MIGUEL EDUARDO TAVARA, MARCO ANTONIO CORONA, JUAN CARLOS MOLINA, JULIO CESAR MORENO GONZALEZ, PEDRO HERNANDEZ HERNANDEZ, JULIO ANTONIO, JULIO CARBONEL, EUSEBIO SANTOS FERROSQULLO, LINO MARTINEZ, JUAN JOSE PENA FARFAN, JOSE FERNANDEZ, and JORGE LEGIS CUYATE individually and on behalf of others similarly situated, Plaintiffs, - against - WILD EDIBLES, INC., 535 THIRD AVENUE LLC d/b/a WILD EDIBLES, RICHARD MARTIN, and JONATHAN MEYER, Defendants.**

**07 Civ. 8127 (LLS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2007 U.S. Dist. LEXIS 93025**

**December 18, 2007, Decided
December 18, 2007, Filed**

**COUNSEL:** [*1] For Cesar A. Barturen, on behalf of themselves and all other employees similarly situated as class and collective representatives, Jason Borges, on behalf of themselves and all other employees similarly situated as class and collective representatives, Raul Lara Molina, on behalf of themselves and all other employees similarly situated as class and collective representatives, Miguel Eduardo Tabara, on behalf of themselves and all other employees similarly situated as class and collective representatives, Marc Antonio Corona, on behalf of themselves and all other employees similarly situated as class and collective representatives, Juan Carlos Molina, on behalf of themselves and all other employees similarly situated as class and collective representatives, Julio Cesar Moreno-Gonzalez, on behalf of themselves and all other employees similarly situated as class and collective representatives, Pedro Hernandez Hernandez, on behalf of themselves and all other employees similarly situated as class and collective representatives, Julio Antonio, on behalf of themselves and all other employees similarly situated as class and collective representatives, Julio Carbonel, on behalf of themselves [*2] and all other employees similarly situated as class and collective representatives, Eusebio Santos Ferrosqullo, on behalf of themselves and all other employees similarly situated as class and collective representatives, Limo Martinez, on behalf of themselves and all other employees similarly situated as class and collective representatives, Juan Jose Pena Farfan, on behalf of themselves and all other employees similarly situated as class and collective representatives, Jose Fernandez, on behalf of themselves and all other employees similarly situated as class and collective representatives, Jorge Legis Cuyate Carmona, on behalf of themselves and all other employees similarly situated as class and collective representatives, Plaintiffs: David Bruce Rankin, LEAD ATTORNEY, David B. Rankin, Attorney At Law, New York, NY.

For Raymundo Lara Molina, on behalf of themselves and all other employees similarly situated as class and collective representatives, Plaintiff: David Bruce Rankin, David B. Rankin, Attorney At Law, New York, NY.

For Wild Edibles, Inc., 535 Third Avenue L.L.C., doing business as Wild Edibles, Richard Martin, Jonathan Meyer, Defendants: Richard M. Howard, LEAD ATTORNEY, Carmelo [*3] Grimaldi, Meltzer, Lippe, Goldstein & Breitstone, LLP, Mineola, NY.

**JUDGES:** Louis L. Stanton, U.S.D.J.

**OPINION BY:** Louis L. Stanton

**OPINION**

Case 1:10-cv-01618-JG-JMA   Document 10   Filed 05/17/10   Page 10 of 14 PageID #: 91

Page 2
2007 U.S. Dist. LEXIS 93025, *

**OPINION, ORDER, AND INJUNCTION**

Plaintiffs, who are current or former employees [1] of defendant Wild Edibles, Inc. ("Wild"), complain that Wild [2] failed to pay them overtime and spread-of-hours wages and retaliated against several named plaintiffs for complaining about Wild's failure to pay those wages, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law § 190 *et seq.* ("Labor Law"), the New York "spread-of-hours" regulation, N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4, and New York contract law.

> 1   Wild says that it never employed named plaintiff Julio Antonio but does not dispute that the other fifteen named plaintiffs are its current or former employees. Martin Aff. P 8, Sept. 20, 2007.
> 2   Defendants are collectively referred to as "Wild."

Plaintiffs move to convert into a preliminary injunction the temporary restraining order forbidding retaliation against them or Wild employees for bringing this action or asserting a claim under the FLSA.

Wild seeks an evidentiary hearing on that motion and cross-moves to dismiss plaintiffs' claims [*4] that Wild retaliated against them in violation of the FLSA, 29 U.S.C. § 215(a)(3), and Labor Law § 215.1.

Unless otherwise noted, the following facts are undisputed.

BACKGROUND

The August 20, 2007 Demonstration

Wild is a wholesale and retail fish purveyor with approximately fifty-five employees. Wild maintains a warehouse facility, main office, and refrigeration unit for seafood storage and processing at 21-51 Borden Avenue in Long Island City and three retail stores. Its warehouse employees start work at about two o'clock each morning to prepare, pick, and pack seafood orders which are then delivered by Wild's drivers to restaurants, hotels and gourmet groceries.

Last summer a union representative of the Industrial Workers of the World - Industrial Union 460-640 ("IWW"), Billy J. Randel, began a drive to recruit new members and organize Wild's warehouse facility. From June until September 2007, Randel and other IWW union representatives regularly stood outside of the warehouse facility, approached Wild employees, and spoke with them about their working conditions. Several of those employees stated to Randel that Wild was not paying them overtime wages.

On August 11, 2007 the IWW held a [*5] meeting attended by plaintiff Raymundo Lara Molina to discuss plans for demanding that Wild pay them overtime wages. On August 17, Wild fired Raymundo Molina. The parties dispute the basis of that action: plaintiffs claim it was in retaliation for organizing Wild employees to demand payment of overtime wages, Compl. P 45; Wild claims it was because Molina "was late 20 out of 30 days in one month." Martin Aff. P 8, Sept. 20, 2007.

From about 2:00 a.m. until 8:00 a.m. on August 20, 2007, a group of Wild employees, its former employee Raymundo Molina, and several IWW representatives staged a demonstration at the warehouse facility to demand payment of overtime wages and the reinstatement of Raymundo Molina, and to notify Wild that several employees had joined the IWW. The group included plaintiffs Jason Borges, Julio Cesar Moreno Gonzalez, Marco Antonio Corona, Raul Lara Molina, Lino Alberto Martinez, and Jose Antonio Fernandez Tavara. The group marched in front of the warehouse facility, chanted their demands, carried and displayed signs, and held up an IWW banner.

Wild's owner and chief executive officer, defendant Richard Martin, arrived at the warehouse facility at about 2:45 a.m. shortly [*6] after receiving a phone call from its night manager notifying him that there was a picket line in front of the warehouse. Martin Aff. P 20, Oct. 18, 2007. Upon arriving, he immediately entered the warehouse building. At about 5:30 a.m., Martin went outside the warehouse with Wild's general manager to see if the crowd of pickets and their signs blocked the drivers' access to the building. *Id.* P 21. According to Martin, "The pickets moved towards us and began to surround us." *Id.* P 22. With Martin encircled, IWW representative Randel directly expressed to Martin the employees' demands, including payment of overtime wages. Randel Aff. P 7, Sept. 15, 2007; Eduardo Tabara Aff. P 6, Sept. 15, 2007.

Alleged Post-Demonstration Retaliation

Plaintiffs have submitted affidavits asserting that (1) Wild discharged Borges on August 20, 2007, Raul Molina on or about August 30, 2007, and Gonzalez in the last week of August 2007 or the first week of September 2007, in retaliation for complaining at the August 20, 2007 demonstration that Wild failed to pay them overtime wages, [3] and (2) Wild constructively discharged Corona on or about September 15, 2007 in retaliation for making the same complaint. [4] [*7]

   3   *See* Borges Aff. PP 5-9, Sept. 13, 2007; Raul Lara Molina Aff. PP 2 and 7, Oct. 14, 2007; Barturen Aff. PP 15-18, Sept. 15, 2007.

   4   Corona Aff. PP 2 and 12, Oct. 14, 2007.

Wild does not dispute that the employment of those plaintiffs ended on or about those dates. But, in its affidavits opposing plaintiffs' motion for a preliminary injunction, Wild denies ordering any retaliatory discharges. Martin swears: "We have taken no actions in retaliation. Everything we have done has been for bona fide business reasons consistent with our regular practices and procedures." Martin Aff. P 6, Oct. 18, 2007. Martin agrees that "Julio Cesar Moreno Gonzalez was discharged", Martin Aff. P 8, Sept. 20, 2007, but claims that was proper because "he failed to appear for work and failed to advise us he would not be appearing for work (commonly called 'no call, no show')." *Id.* Martin contends that Borges voluntarily quit, that Raul Molina resigned because of a no call-no show on August 29, 2007, and that Corona resigned because of a no call-no show on September 15, 2007. Martin Aff. PP 17-19, Oct. 18, 2007.

Proceedings in this Court

Plaintiffs' complaint filed September 17, 2007 alleges that Wild failed to pay [*8] them overtime and spread-of-hours wages in violation of the FLSA, the Labor Law, the New York "spread-of-hours" regulation, N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4, and New York contract law.

The complaint also asserts three claims of retaliatory discharge: *first*, that Wild discharged several named plaintiffs in retaliation for the complaint at the August 20, 2007 demonstration that Wild failed to pay them overtime wages, as a violation of Labor Law § 215.1, which makes it unlawful for an employer to "discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer, or to the commissioner or his authorized representative, that the employer has violated any provision" of the Labor Law, Compl. PP 42-49 and 70-77; *second*, the same action as a violation of FLSA § 215(a)(3), which makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA, Compl. P 75; *third*, as a violation of both statutes, that Wild discharged Raymundo Molina "shortly before the [*9] August 20, 2007 action upon learning of his leadership role organizing workers to demand union and overtime rights", *id.* PP 45, 75, and in retaliation for his and the others' assertion of their labor rights and complaints against Wild's unlawful labor practices. *Id.* PP 71-75.

On September 17, 2007 the Court entered a temporary restraining order forbidding any retaliation against any employee for bringing this action or for asserting a FLSA claim, and requiring that plaintiffs' counsel be given prior notice of any proposed adverse employment action against any plaintiff. These restraints were continued, with slight elaboration, at a hearing on September 20, 2007 and have remained in effect since then.

DISCUSSION

A. *Motion for a Preliminary Injunction*

Plaintiffs move to convert into a preliminary injunction the temporary restraining order currently in place "against the defendants, their agents, and employees and all persons acting in concert with them, enjoining them from taking any adverse employment action or terminating the employment of any plaintiff or other employee, any other present employee, for the bringing of this action or for asserting a claim under the Fair Labor Standards Act . [*10] . . ." Prelim. Inj. Hr'g Tr. 19-20, Sept. 20, 2007.

To prevail on a motion for a preliminary injunction, the movant must demonstrate "a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party." *Time Warner Cable of New York City v. Bloomberg L.P.,* 118 F.3d 917, 923 (2d Cir. 1997) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979)).

1. Threat of Irreparable Injury

The risk that other employees may be deterred from protecting their rights under federal law or from providing testimony for plaintiffs prosecuting federal claims may constitute irreparable injury. *See Holt v. Continental Group, Inc.,* 708 F.2d 87, 91 (2d Cir. 1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1294, 79 L. Ed. 2d 695 *and* 465 U.S. 1038, 104 S.Ct. 1316, 79 L. Ed. 2d 712 (1984) ("A retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights under the Act or from providing testimony for the plaintiff in her effort to protect her own rights. These risks [*11] may be found to constitute irreparable injury.").

Even if the terminations mentioned above were voluntary or not retaliatory (as Wild claims), Wild has not refuted the evidence showing that they have intimidated Wild employees who, are not parties in this action and deterred them from asserting their rights under the FLSA, and have caused named plaintiffs to consider

dropping their claims in this case. IWW union representative Randel states: "Many workers I have spoken with are terrified of asserting their rights because they fear they will be fired." Randel Aff. P 13. [5] Plaintiff Jose Antonio Fernandez Tavara states: "There were also co-workers that were not a part of the case because they were scared." Fernandez Tavara Aff. P 23, Oct. 15, 2007. Plaintiff Miguel Eduardo Tavara, who is still employed by Wild, swears: "I am afraid that I am going to loosed [*sic*] my job and also that they will fire my brother. On several occasions I have thought about dropping the case and so has my brother." Eduardo Tabara Aff. P 9, Sept. 15, 2007.

> 5   Hearsay evidence may be considered in deciding a motion for a preliminary injunction. *See Federal Savings & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 558 (5th Cir. 1987); [*12] *accord Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC,* No. 07 civ. 00349 (RJH), 2007 U.S. Dist. LEXIS 16391, at *15, 2007 WL 704171, *5 n.5 (S.D.N.Y. Mar. 7, 2007); *Zeneca Inc. v. Eli Lilly and Co.,* No. 99 civ. 1452 (JGK), 1999 U.S. Dist. LEXIS 10852, 1999 WL 509471, *2 (S.D.N.Y. Jul. 19, 1999); *SEC v. Musella,* 578 F. Supp. 425, 427-29 (S.D.N.Y. 1984).

Based on that unrefuted evidence, plaintiffs have demonstrated a threat of irreparable injury.

2. Fair Ground of Litigation

In light of the disputes on almost every point of plaintiffs' factual assertions, it is not feasible to say that either side has a probability of success on the merits. It is clear, however, that those assertions present a fair ground of litigation.

Plaintiffs claim that Wild discharged Lino Alberto Martinez on September 26 and Jose Antonio Fernandez Tavara on October 8, 2007 in retaliation for filing the complaint in this action about one month earlier on September 17, 2007. [6] Wild categorically denies retaliating against any employee, [7] and claims that "Lino Martinez quit his job when he punched out in the middle of his shift", [8] and Jose Antonio Fernandez Tavara "relinquished his position" because of a no call-no show on October 8, 2007. [9] Plaintiffs claim that [*13] Wild discharged Gonzalez, Borges and Raul Molina for complaining at the August 20, 2007 demonstration that Wild failed to pay them overtime wages. [10] Wild admits that it discharged Gonzalez, [11] but claims that action was proper because of a no call-no show, and it claims that Borges and Raul Molina quit voluntarily. [12]

> 6   *See* Martinez Aff. PP 2 and 14, Sept. 27, 2007; Eduardo Tavara Aff., Oct 5, 2007; Fernandez Tavara Aff. PP 30-31.
> 7   Martin Aff. P 4, Oct. 18, 2007.
> 8   *Id.* P 11.
> 9   *Id.* P 14; *see also* Rice Aff. P 9, Oct. 18, 2007; Carbonel Aff. PP 3-6, Oct. 18, 2007.
> 10   *See* Borges Aff.; Raul Lara Molina Aff.; Eduardo Tabara Aff. P 7, Sept. 15, 2007; Barturen Aff. PP 15-18.
> 11   Martin Aff. P 8, Sept. 20, 2007.
> 12   Martin Aff. PP 17-19, Oct. 18, 2007.

These and similar issues present fair grounds for litigation.

3. Balance of Hardships

The balance of hardships tips decidedly in plaintiffs' favor. The requested preliminary injunction enjoining Wild "from taking any adverse employment action or terminating the employment of any plaintiff or other employee, any other present employee, for the bringing of this action or for asserting a claim under the Fair Labor Standards Act", Prelim. Inj. Hr'g Tr. 19-20, Sept. [*14] 20, 2007, inflicts no hardship on Wild, other than that already imposed by the familiar provision of FLSA § 215(a)(3), which makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. On the other hand, the denial of the requested relief would leave plaintiffs exposed to the perceived risk of losing their livelihoods at the hands of an employer that has concededly fired other employees, under ambiguous circumstances, and with full knowledge of the statutes forbidding retaliation.

B. *Request for an Evidentiary Hearing*

In a letter to the Court dated November 13, 2007, Wild requested an evidentiary hearing on plaintiffs' motion for a preliminary injunction. Howard Ltr. at 1. Wild argues that "the parties' sworn recitations of the events in question directly contradict each other, mandating that Plaintiffs' motion may not be granted absent an evidentiary hearing." *Id.*

On the contrary, the direct contradictions must be resolved by trial, and it is the function of the preliminary injunction to preserve the *status quo* until whatever [*15] discovery is necessary has been accomplished and trial can be held.

C. *Motion to Dismiss*

In its papers opposing the request for a preliminary injunction, Wild moves for dismissal of the retaliation

claims pleaded in the complaint. Defs.' Mem. of Law in Opp'n to the Req. for a Prelim. Inj. and a TRO at 3-6, Sept. 19, 2007. Wild argues: "Because there is no evidence that Plaintiffs and/or their attorney filed a formal complaint for violations of the FLSA before the filing of this action, the retaliation claims fail as a matter of law." *Id.* at 5 (citations omitted).

Treating the motion as one made pursuant to Fed. R. Civ. P. 12(b)(6), it is granted to the extent of dismissing the claims that Wild violated FLSA § 215(a)(3) by discharging Borges, Gonzalez, Corona, Raul Molina, and Raymundo Molina. Compl. PP 42-49 and 70-77. That section makes it unlawful

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

FLSA § 215(a)(3). [*16] "The plain language of this provision limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 55 (2d Cir. 1993) (citation omitted). There is no allegation in the complaint that plaintiffs filed a formal complaint, instituted a proceeding, or testified in a proceeding under or related to the FLSA before the alleged discharges of those five plaintiffs. Accordingly, those FLSA retaliation claims are dismissed, with leave to replead.

Because the New York law is different, Wild's motion is denied to the extent it seeks dismissal of the claims that the discharges of those five plaintiffs violated Labor Law § 215.1. Compl. PP 42-49 and 70-77. That section provides:

> No employer or his agent, or the officer or agent of any corporation, shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer, or to the commissioner or his authorized representative, that the employer has violated any provision of this chapter, or because such employee has caused to be instituted [*17] a proceeding under or related to this chapter, or because such employee has testi-

> fied or is about to testify in an investigation or proceeding under this chapter. . . .

Labor Law § 215.1. An employer violates Labor Law § 215.1 by retaliating against an employee for making an informal complaint to the employer that the employer has violated any provision of the Labor Law. *See Jacques v. Dimarzio, Inc.,* 200 F. Supp. 2d 151, 154-55, 162 (E.D.N.Y. 2002)(employee's claim that her employer violated Labor Law § 215.1 by discharging her in retaliation for orally complaining to supervisors about workplace health and safety conditions survived employer's motion for summary judgment). The complaint alleges that Wild discharged Borges, Gonzalez, Corona, and Raul Molina in retaliation for making the informal complaint at the August 20, 2007 demonstration that Wild failed to pay them overtime wages. Compl. PP 42-49 and 70-77. It also alleges that Wild discharged those plaintiffs and "Raymundo Lara Molina with discriminatory intent and in retaliation for their complaint against Defendants' unlawful labor practices." (*Id.* P 72.) Those allegations state claims for relief against violations of [*18] Labor Law § 215.1.

The dismissal of the FLSA retaliation claims pleaded in the complaint does not eliminate the basis for the preliminary injunction, which rests on the totality of the evidence, including the surviving claims that Wild failed to pay plaintiffs overtime wages in violation of the FLSA, claims that Wild violated FLSA § 215(a)(3) by discharging two plaintiffs after the filing of the complaint in retaliation for bringing this lawsuit, and the claims that all the discharges violated Labor Law § 215.1. *See People by Abrams v. Terry,* 45 F.3d 17, 23 (2d Cir. 1995) ("The preliminary injunction issued, however, rests not only on section 1985(3), but also on independent state law grounds. Thus, even assuming section 1985(3) does not authorize an injunctive remedy, the injunction can be sustained on the basis of the independent state law claims." (citations omitted)); Labor Law § 215.2 ("An employee may bring a civil action in a court of competent jurisdiction against any employer or persons alleged to have violated the provisions of this section. The court shall have jurisdiction to restrain violations of this section, within two years after such violation, and to order all appropriate [*19] relief, including rehiring or reinstatement of the employee . . . .").

CONCLUSION

For the reasons set forth above:

> (1) plaintiffs' motion to convert the temporary restraining order into a preliminary injunction is granted;

(2) Wild's request for an evidentiary hearing on that motion is denied;

(3) Wild's motion to dismiss is granted, with leave to replead, with respect to the claims that Wild violated FLSA § 215(a)(3) by discharging Jason Borges, Julio Cesar Moreno Gonzalez, Marco Antonio Corona, Raul Lara Molina, and Raymundo Lara Molina; and

(4) Wild's motion to dismiss is denied with respect to the claims that Wild violated Labor Law § 215.1 by discharging those five plaintiffs.

PRELIMINARY INJUNCTION

IT IS HEREBY ORDERED that defendants, their agents and employees, and all persons acting in concert with them, are restrained and enjoined from taking any adverse employment action against, or terminating the employment of, any plaintiff or other employee for bringing this action or for complaining that defendants failed to pay them wages in violation of the Fair Labor Standards Act or the New York Labor Law; and that

All such persons are further restrained and enjoined from taking any adverse [*20] employment action against, or terminating the employment of, any plaintiff or other employee, without providing plaintiffs' counsel with three days' prior notice, except that defendants may suspend an employee with notice one day thereafter to plaintiffs' counsel when suspension is urgently necessary as a matter of health, safety or to avoid threatened violence.

So ordered.

Dated: New York, NY

December 18, 2007

/s/ Louis L. Stanton

Louis L. Stanton

U.S.D.J.